**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION**

| | |
|---|---|
| **THE WATERS WORKS AND SEWER BOARD OF THE TOWN OF CENTRE,** ) ) ) ) | |
| **Plaintiff,** ) ) | |
| **v.** ) ) | **CASE NO.: 4:17-CV-1026-KOB** |
| **3M COMPANY, et al.** ) ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

Plaintiff Waters Works and Sewer Board of the Town of Centre brought suit against various manufacturers, suppliers, distributors, and users of chemicals in Cherokee County Circuit Court, alleging the Defendants had contaminated the town's water source with perfluorinated chemicals. (Doc. 1-2 at 3). The Defendants represent the majority of the carpet industry in North America and are concentrated around Dalton, Georgia. However, Defendant Industrial Chemicals is an Alabama corporation based in Birmingham. Defendant Shaw Enterprises removed the case to federal court, alleging that Centre had fraudulently joined Industrial Chemicals to defeat diversity jurisdiction. Centre moved to remand the case, arguing that Industrial Chemicals was properly joined and, therefore, complete diversity did not exist, preventing the court from having subject matter jurisdiction. (Doc. 112).

Shaw lodged the same fraudulent joinder argument in the nearly identical case of *The Water Works and Sewer Board of Gadsden v. 3M Co.*, No. 4:16-cv-1755-KOB, 2017 WL 4236371 (N.D. Ala. Sept. 25, 2017), which this court remanded to state court on September 25, 2017. That case involved the same issues, allegations, and defendants as this case. Shaw's

1

argument was also the same—that the Alabama plaintiff fraudulently joined Industrial Chemicals, an Alabama corporation, to destroy complete diversity. This court again rejects Shaw's argument for fraudulent joinder for the same reasons it rejected it in the Gadsden case.

Because the court agrees that Industrial Chemicals was not fraudulently joined, it will GRANT Centre's motion and REMAND this case to state court.

## I.     BACKGROUND

### A.     Allegations in the Complaint

Despite the scope of this action, the allegations in the complaint are simple. Plaintiff Water Works and Sewer Board of the Town of Centre provides drinking water directly to its own residential and commercial customers in Cherokee County, Alabama. Centre draws its source water from the Coosa River at a point downstream from Dalton, Georgia, and has recently learned that its water supply is contaminated with perfluorinated chemicals (PFCs), including perfluorooctanoic acid (PFOA) and perfluorooctane sulfonate (PFOS).[1]

Centre has named manufacturers, suppliers, and users of PFCs as Defendants it believes are jointly liable to it for negligence, nuisance, trespass, and wantonness for causing the presence of the chemicals in Centre's water source. Because of the contamination, Centre says it has lost profits as customers have switched to other sources of water and faces future expenses associated with installing and operating a water filtration system because its current system cannot remove or reduce PFC levels in the water to the level recommended by the EPA.

### B.     Evidence Provided to the Court

---

[1] Centre is not alone. The town of Gadsden, Alabama also learned that its water supply was contaminated with PFCs and filed a similar suit against the same group of defendants. *See Water Works and Sewer Bd. of Gadsden v. 3M Co.*, No. 4:16-cv-1755-KOB, 2017 WL 4236371 (N.D. Ala. Sept. 25, 2017).

*1.      Evidence Submitted by the Plaintiff*

Centre submitted evidence about industrial use of PFCs, including a white paper from the Association of State and Territorial Solid Waste Management Officials (ASTSWNO) Federal Facilities Research Center's Remediation and Reuse Focus group on PFCs. *See* (Doc. 112-1). The paper notes that PFOA and PFOS are the two most prevalent types of PFCs; companies have used PFCs to make fluropolymer coatings and products that are oil and water repellent, including clothing, upholstery, paper, carpets, and non-stick cookware. Additionally, the National Institute of Environmental Health says that PFCs can be used to ensure that products, such as carpet and sofas, resist stains. *See* (Doc. 112-2 at 2).

 PFCs are also used in other compounds. An OECD/UNEP[2] Global PFC Group Synthesis Paper submitted by Centre also mentions that PFCs are sometimes components of foaming agents and hydraulic fluids. *See* (Doc. 112-5). According to research cited by the ASTSWNO paper, the highest concentrations of PFCs are found in areas with direct discharge from industries that utilize PFCs.

Centre also submitted an Environmental Protection Agency question and answer document on PFC contamination in Dalton, Georgia. The EPA believes that PFC contamination in Dalton results from industrial discharge by carpet manufacturers. *See* (Doc. 112-5 at 5).

Finally, Centre has also submitted evidence regarding Industrial Chemicals' business and its potential relationship to PFCs. Industrial Chemicals, an Alabama corporation, maintains a distribution site in Dalton, and its advertising materials say it sells "textile chemicals," "surfactants," and "polymers," as well as foaming agents, hydraulic fluids, and metal plating and

---

[2] The Organisation for Economic Co-operation and Development (OECD)/United Nations Environment Programme (UNEP).

finishing chemicals. (Doc. 112-4 at 5–11). Industrial Chemicals is also a distributor for Omni-Chem[136], which supplies over 5,000 different chemical products.

Centre also notes that distribution is not the sole focus of Industrial Chemicals' business. According to the company's website, it also transports and disposes of waste materials. *See* (Doc. 167-2).

2. *Evidence Submitted by the Defendants*

In the notice of removal and also in opposition to Centre's motion to remand, the Defendants provided numerous affidavits to establish that Centre fraudulently joined Industrial Chemicals. The affidavits fall into three general categories: Industrial Chemicals' officers; expert testimony; and the other Defendants stating they did not buy chemicals containing PFCs from Industrial Chemicals.

The Defendants have provided two affidavits from Chip Welch, the CEO/President of Industrial Chemicals. In his first affidavit, Mr. Welch says that Industrial Chemicals has never used PFCs during a manufacturing process or marketed or sold chemicals designed to create water or stain resistance. Industrial Chemicals had records of sales dating from 2005. Mr. Welch reviewed sales made to the other Defendants since 2005, and says, to his knowledge, none of the chemicals the company sold to these Defendants contained PFCs. *See* (Doc. 1-6).

In his second affidavit, Mr. Welch states that the polymers sold by the company are primarily used for water treatment and do not contain PFCs; the items purchased from Omni-Chem[136], to his knowledge, do not contain PFCs; and the hydraulic fluids sold by the company do not contain PFCs. Further, Mr. Welch says the company has never sold to any company located in or around Dalton, Georgia surfactants used in firefighting foams or mist suppressants for metal plating, products that commonly contain PFCs. *See* (Doc. 165-28).

William Welch, Industrial Chemicals' original founder, also submitted an affidavit. Mr. Welch states that Industrial Chemicals opened a warehouse in Dalton, Georgia in 1996 and that, to his knowledge, the company never sold products containing PFCs to customers in that area. Mr. Welch says the products sold to customers in Dalton were "not chemicals designed to impart water, strain, or grease resistance to carpet or other textile products." (Doc. 165-29 at 4).

The Defendants also submitted an affidavit from Dr. Dennis Paustenbach, an industrial hygienist and toxicologist. Dr. Paustenbach says he reviewed a list of all the chemical products Industrial Chemicals sold to these Defendants, and none contained PFCs or are known to degrade into PFCs. In response, Centre questioned Dr. Paustenbach's objectivity and methods. *See* (Doc. 167-3 at 7).

Finally, the Defendants have submitted other affidavits saying that none of them purchased chemicals containing PFCs from Industrial Chemicals. (Docs. 189-1–7, 9–12, 14–16, 19, 21, 23, 26–27, 29). Additionally, the Defendants provided an affidavit from the managing director of Omni-Chem[136] stating that none of the products purchased or distributed by Industrial Chemicals contained PFCs or are known to degrade into them. (Doc. 165-32).

## II.    LEGAL STANDARD

A defendant may remove a case from state court if the action could have originally been filed in federal court. *See* 28 U.S.C. § 1441(a). Generally, federal courts have jurisdiction over civil cases where the amount in controversy exceeds $75,000 and complete diversity between the parties exists. *See* 28 U.S.C § 1332; *Triggs v. John Crump Toyota*, 154 F.3d 1284, 1287 (11th Cir. 1998) (noting that for the diversity requirement to be met, "every plaintiff must be diverse from every defendant").

Even if complete diversity is not present, an action may still be removable if the plaintiff fraudulently joined the non-diverse parties. *See Triggs*, 154 F.3d at 1287. Joinder is fraudulent in two circumstances: (1) where no possibility exists that the plaintiff can prove a cause of action against the resident defendant; or (2) where the complaint contains outright fraud in the pleading of jurisdictional facts. *See id*. The Eleventh Circuit has also recognized a related theory— fraudulent misjoinder. Fraudulent misjoinder occurs when claims against a non-diverse defendant are joined to the claims against the diverse defendant, even though the claims share "no real connection." *See id*. at 1289.

The court determines whether a party has been fraudulently joined "based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." *Pacheco de Perez v. AT&T Co*., 139 F.3d 1368, 1380 (11th Cir. 1998). But, the court should proceed with caution in looking beyond the pleadings; causation should not be conflated with jurisdiction. *See Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) ("The fact that the plaintiffs may not ultimately prevail against the individual defendants because of an insufficient causal link between the defendants' actions and the plaintiffs' injuries does not mean that the plaintiffs have not stated a cause of action for purposes of the fraudulent joinder analysis."). Jurisdictional analysis "must not subsume substantive determination." *Id*. (quoting *B, Inc. v. Miller Brewing Co*., 663 F.2d 545, 550 (5th Cir. Unit A 1981)).

The removing party's burden is a "heavy one." *Crowe*, 113 F.3d at 1538. A defendant must demonstrate by clear and convincing evidence that a plaintiff fraudulently joined a resident defendant. *See Florence v. Crescent Res., LLC*, 484 F.3d 1293, 1297 n.2 (11th Cir. 2007). And a removing defendant asserting fraudulent joinder must show that the plaintiff could not possibly

state a claim against the resident defendant in state court. *Triggs*, 154 F.3d at 1287.

Conversely, a plaintiff seeking remand has a much lighter burden. He "need not have a winning case . . . for the joinder to be legitimate." *Id.* Rather, he need only show a "reasonable basis for predicting that the state law *might* impose liability on the facts involved." *Crowe*, 113 F.3d at 1538 (emphasis in original) (internal quotation marks omitted). And, the court must "resolve all questions of fact . . . in favor of the plaintiff." *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989). But a question of fact must exist for the plaintiff to enjoy that presumption; if the defendant provides undisputed evidence, the court may accept it. *Legg v. Wyeth*, 428 F.3d 1317, 1323 (11th Cir. 2005). Doubt about a legal issue under state law must also be resolved in favor of remand. *See Crowe*, 113 F.3d at 1538 ("To determine whether the case should be remanded, the district court . . . must resolve any uncertainties about state substantive law in favor of the plaintiff.").

## III.    DISCUSSION

The sole issue presented in the motion to remand is whether Centre properly joined Industrial Chemicals, an Alabama corporation, to this action. The Defendants argue that Industrial Chemicals was both fraudulently joined and misjoined to this action because the company did not sell any chemicals containing PFCs to the Defendants or any other customers in the Dalton area. The court will address both grounds on which Defendants seek to defeat Plaintiff's motion to remand.

### A.   Fraudulent Joinder

The removing Defendants have the heavy burden of proving "there is *no possibility* the plaintiff can establish a cause of action against the resident defendant." *Crowe*, 113 F.3d at 1538

(emphasis added). To determine whether they have met this burden, the court reviews both the legal sufficiency of the complaint as well as the Plaintiff's and Defendants' factual allegations. *Id*. The removing Defendants will prevail only if they prove, by clear and convincing evidence, that none of Plaintiff's claims against the resident Defendant have any possibility of success.

So, these Defendants must negate any possibility that Industrial Chemicals has ever sold, distributed, transported, supplied, or disposed of any chemical products containing PFCs or PFC-producing compounds to or on behalf of any entity in the Dalton area since Industrial Chemicals was founded in 1970. Defendants' burden is regarded as "heavy" for good reason. Now, the court will address why Defendants fail to meet that burden.

The court needs devote little time addressing the *legal* sufficiency of Centre's complaint, as the Defendants do not seriously challenge it. The Defendants only argue that Centre's general allegations indicate fraudulent joinder. But, when a plaintiff names several defendants but does not allege specific conduct for each defendant, "allegations can be and usually are to be read in such a way that each defendant is having the allegation made about him individually." *Crowe*, 113 F.3d at 1539. Therefore, a plaintiff's pleading is not inadequate merely because it does not contain specific individualized allegations against the resident defendant.

The Defendants' challenge focuses on the *factual* sufficiency of Centre's claim against Industrial Chemicals, arguing "[t]he law requires more" than the "speculation" Centre provided inculpating Industrial Chemicals. (Doc. 165 at 3). The court disagrees with the Defendants' assessment for two reasons.

First, the affidavits the Defendants submitted do not conclusively establish that Industrial Chemicals never sold, distributed, transported, supplied, or disposed of chemicals containing PFCs, or that would degrade into PFOS or PFOA compounds, that eventually contaminated

Centre's water supply. Second, even if the affidavits do establish that Industrial Chemicals never sold PFCs, or otherwise contributed to the PFC contamination, Centre adequately disputes that evidence at this stage of the case, thus creating a question of fact that the court must resolve in its favor.

### 1. *Sufficiency of the Affidavits*

The Defendants submitted affidavits from William Welch and Chip Welch to establish that Industrial Chemicals never sold chemicals containing PFCs to Dalton customers, including the defendants. However, Chip Welch's first affidavit attached to the notice of removal states that Industrial Chemicals "does not have records regarding product sales made prior to 2005." (Doc. 1-6 at 3). Also, William Welch's declaration that Industrial Chemicals has never sold or distributed products containing PFCs is based solely on his memory and his knowledge of the chemical structure of every product that Industrial Chemicals has sold since 1970. Given the lack of records, the testimony of two officers that Industrial Chemicals has not sold products containing PFCs over a forty-year span fails to present clear and convincing evidence that Centre does not have any possibility of recovering against that company.

The Defendants' other affidavits do not remedy this defect. If taken as true, the affidavits would only establish that, since 2005, Industrial Chemicals has not provided chemicals containing PFCs to other *defendant* companies; they would not establish that Industrial Chemicals *never* provided chemicals containing PFCs to any customer near Dalton, Georgia. Further, none of the affidavits speak to Industrial Chemicals' waste transportation business. The Defendants have not provided clear and convincing evidence that Industrial Chemicals did not transport or dispose of PFCs upstream from Gadsden. Thus, Defendants' affidavits leave open the important question of whether the resident defendant may be found liable for contaminating

Centre's water source with perfluorinated chemicals. With such an opening, the court cannot say that Defendants have shown no possibility that Industrial Chemicals could be found liable to Centre.

### 2. Whether Centre has Shown "Disputed" Issues

Defendants' affidavits leave open the possibility that Industrial Chemicals' actions, at some point in time, contributed to Centre's contaminated water supply. But even if the court assumes that the Defendants' affidavits effectively assert that no possibility exists that Industrial Chemicals could be liable to Centre, Centre has sufficiently challenged those affidavits so as to create a dispute of fact. Importantly, the court must resolve that dispute of fact in favor of Centre at this point of the litigation. *See Crowe*, 113 F.3d at 1542.

The Defendants have essentially asked for summary judgment, but the court cannot consider such a request in this procedural posture. *See* (Doc. 165 at 12) ("Utterly missing from plaintiff's submissions . . . is any *actual evidence or proof* that Industrial Chemicals made or distributed any product containing PFCs or that such compounds found their way into plaintiff's water supply."). Although summary judgment and fraudulent joinder share similar procedures, "the substantive standards are very different." *Crowe*, 113 F.3d at 1542. The case law has not always been clear about *how* the standards differ, but it has been clear that the standards do differ.

A key difference between fraudulent joinder and summary judgment appears in the burden of production. Defendants seem to imply that Centre has an obligation now similar to a respondent's burden of producing evidence under Rule 56. *See* Fed. R. Civ. P. 56 ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record."). However, a fact may be sufficiently "disputed" for

10

the purpose of fraudulent joinder analysis even if the same response would not be sufficient to survive summary judgment: for fraudulent joinder purposes, a plaintiff's burden is simply to offer *some* evidence to reasonably contest that of the defendants. *See Legg v. Wyeth, 428.F3d 1317, 1323* (11th Cir. 2005); *See, e.g. Taylor Newman Cabinetry, Inc. v. Classic Soft Trim, Inc.*, 436 F. App'x 888, 892 (fact was contested for fraudulent joinder analysis when plaintiff "generally contested [defendant's] version of events"). In this manner, defeating a fraudulent joinder motion is a "lighter" burden for the plaintiff than at summary judgment.

Defendants heavily lean on the affidavits of William Welch, Chip Welch, and Dr. Paustenbach to show the absence of any possibility that Centre has a legitimate cause of action against Industrial Chemicals. But Centre disputes those affidavits by attacking Chip Welch's lack of credentials that would qualify him to determine whether a chemical compound contains PFCs.

And, as previously noted, Chip Welch's knowledge appears limited to records since 2005, and does not eliminate earlier sales or sales to companies not named as defendants. While Defendants presented Dr. Paustenbach's affidavit to shore up Chip Welch's declaration, his testimony is insufficient to prevent a dispute of fact. Dr. Paustenbach concluded that none of the products that Industrial Chemicals sold to Defendants *in the carpet manufacturing industry* contain PFOA or PFOS. Again, this testimony does not rule out the possibility that Industrial Chemicals contributed to Centre's injury by other means. But even if the affidavit did, Centre satisfies its light burden of presenting *some* evidence contesting Dr. Paustenbach's affidavit. *See Crowe*, 113 F.3d at 1541. Centre does so by noting that many of his past studies have suffered from defects and raises questions regarding the credibility of his work. *See* (Doc. 193 at 13–15). Thus, Defendants' affidavits are not undisputed, and the court must resolve all contested issues

of fact in Centre's favor. *Crowe*, 113 F.3d at 1541–42.

The Defendants' broader contention is that *Nelson v. Whirlpool Corp.*, 668 F. Supp. 2d 1368 (S.D. Ala. 2009) imposes a burden on the plaintiff to produce evidence inculpating the non-diverse defendant. But, even if it were controlling, *Nelson* does not impose such a burden of production. While ostensibly relying on *Nelson*'s holding, the Defendants ignore the analytical framework of the opinion—the application of Rule 11.[3] *See id*. Instead, the Defendants hone in on Judge Steele's admonition that a plaintiff is not free to sue whomsoever he wishes simply because no exculpating evidence exists—unassailable as a legal principle but inapplicable to this case.

The analysis in *Nelson* does not apply because Centre has conducted a reasonable investigation under the circumstances, satisfying the requirements of Rule 11. In *Nelson*, the plaintiffs sued a party without any evidence to support their theory of how the party could be liable to them, *despite being in possession of a means to obtain that evidence*. The court in *Nelson* did not find fraudulent joinder simply because the plaintiffs produced no inculpating evidence, but because the plaintiffs were in a position to determine whether a defect existed for which the resident defendant could be held responsible and elected not to do so. Under those circumstances, the investigation plaintiffs undertook was not reasonable to support their claims against the resident defendant. *See Nelson*, 668 F. Supp. 2d at 1377–78.

The plaintiffs' deliberate inaction in the face of probative evidence in *Nelson* contrasts with Centre's position in this case. Here, the Defendants improperly claim Centre presented "*no evidence whatsoever*" that Industrial Chemicals could be liable to it. But, Centre has produced

---

[3] Notably, *Nelson v.Whirlpool Corp.*, 668 F. Supp. 2d 1368 (S.D. Ala. 2009) is only persuasive authority. Thus the Rule 11 analysis is not the sole means of analysis available to this court.

sufficient evidence to create "contested issues of fact" that the court must resolve in the Plaintiff's favor. *See Crowe v. Coleman*, 113 F.3d 1536, 1542 (11th Cir. 1997). Centre knows, through its own testing and EPA's confirmation, that PFCs contaminated its water supply. It knows, from Industrial Chemicals' own website and sales literature, that Industrial Chemicals sells, distributes, transports, and disposes of chemical products to or on behalf of companies in industries that have been known to use PFCs. Centre does not possess evidence it could test to determine whether Industrial Chemicals caused the presence of chemicals in its water, but it showed Industrial Chemicals distributed products known to contain PFCs. What more investigation could Centre have undertaken at this point? Judge Steele's admonition simply does not apply to the facts here. Centre has not blindly sued a defendant and then pled that the defendant lacks conclusive exculpating evidence. Instead, it has undertaken a reasonable investigation under the circumstances.

Is the evidence enough to survive summary judgment? Perhaps not. But Rule 56 is not the standard, and to apply it here would be premature. Despite the Defendants' protestations to the contrary, the evidence *is* inculpating, even if it is not conclusive. Centre is entitled to rely on circumstantial evidence and inductive reasoning at this point; it is only required to generally contest, not specifically refute, the Defendants' version of events. Centre has done that.

B.  Fraudulent Misjoinder

The Defendants also claim Centre fraudulently misjoined Industrial Chemicals because "the factual nexus among alleged claims . . . does not satisfy the requirements of joinder set forth in Rule 20 of the Federal Rules of Civil Procedure." (Doc. 189 at 24).

Rule 20 permits plaintiffs to join claims against defendants if they assert a right to joint and several relief arising out of the same occurrence and if the claims share any question of law

or fact. The rule is construed broadly. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966) ("Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.").

Whether and how Centre's water supply became contaminated with PFCs is a common question of fact among the claims against Industrial Chemicals and the other Defendants. Further, the allegation that Industrial Chemicals supplied products containing PFCs to Defendants who used them in their products, resulting in PFCs contaminating the Coosa River, means that the Defendants acted in concert, and would be jointly and severally liable. Therefore, the plaintiff's complaint easily satisfies Rule 20. Centre did not fraudulently misjoin Industrial Chemicals.

## IV.    CONCLUSION

Defendants have failed to show that no possibility exists that Centre could prevail on its claims against Industrial Chemicals. Because the Defendants have failed to carry their burden in demonstrating that Centre fraudulently joined Industrial Chemicals, complete diversity does not exist and the court lacks subject matter jurisdiction over this case. The court will enter a separate order consistent with this opinion, granting Centre's motion and remanding this case to Cherokee County Circuit Court.

**DONE** this 7th day of November, 2017.

_____
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE